IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| | | |
| WILFRED T. AZAR, III | * | Case No. 11-19693 |
| MELANIE CAROLE AZAR | | |
| | * | Chapter 7 |
| Debtors | | |
| | * | |
| | | |
| RICHARD BASCIANO | * | |
| 300 W 43rd Street, Suite # 400 | | |
| New York, NY 10036 | * | |
| | | |
| Plaintiff | * | |
| | | |
| v. | * | Adversary No. |
| | | |
| WILFRED T. AZAR, III | * | |
| 215 Alynn Way | | |
| Queenstown, MD 21658 | * | |
| | | |
| and | * | |
| | | |
| MELANIE CAROLE AZAR | * | |
| 215 Alynn Way | | |
| Queenstown, MD 21658 | * | |
| | | |
| Defendants | * | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

RICHARD BASCIANO, a creditor in the above captioned case, by Steven M. Sindler, his attorney, submits this Complaint to Determine Dischargeability of Debt and states:

1.  The Debtors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on May 9, 2011.

1

2.  That the Court has jurisdiction over this complaint pursuant to 28 U.S.C. §1334 and 11 U.S.C. §523.  This is a core matter under 28 U.S.C. § 157.

3.  The Plaintiff is a Chapter 7 creditor in the case of Wilfred T. Azar, III and Melanie Carole Azar, Case No. 11-19693.

4.  The Defendants are the Chapter 7debtors herein.

5.  Joseph J. Bellinger is the Chapter 7 Trustee of the bankruptcy estate of the Defendants.

<u>FACTUAL ALLEGATIONS</u>

6.  In or about November 2003, the Defendants and Richard Basciano ("Basciano") agreed to undertake as a joint venture the building, marketing and sale a luxury home on the residential parcel of real property in Sarasota, Florida, known as 751 Siesta Key Circle, Sarasota, FL 34242 (the "Siesta Key Property").

7.  The Defendants, through their Maryland limited liability company, Empire Management Services, LLC ("Empire"), purchased the Siesta Key Property on or about October 3, 2001.

8.  The understanding reached by the parties was that the Defendants would contribute the Siesta Key Property and build, market and sell a luxury home thereon, that Basciano would provide funds to construct and market the luxury home as a passive investor and they would split the net proceeds from the sale of the luxury home.

9.  Basciano never actively participated in the construction and marketing of the luxury home on the Siesta Key Property.

2

10.  On November 18, 2003, the Defendants, acting through Empire, and Basciano formed a Maryland limited liability company, Siesta Key Investments, LLC ("Siesta Key") for the purpose of carry out the joint venture aforesaid.   The members of Siesta Key were Empire and Basciano.

11.  The Defendants were members of Empire and Wilfred Azar was Empire's managing member.

12.  On or about February 10, 2004, Empire and Basciano executed the Operating Agreement for Siesta Key (the "Operating Agreement") which provided in detail the terms of the joint venture, including the capital contributions of Empire and Basciano, the ownership of the Siesta Key Property and the management of Siesta Key.

13.  Empire's initial capital contribution to Siesta Key was the Siesta Key Property of which Empire owned, which was subject to a mortgage to Republic Bank with an unpaid principal balance of $1,073,305.54 as of the date of Operating Agreement (the "Republic Mortgage") and which had a agreed net equity value of $800,000.

14.  Basciano's initial capital contribution to Siesta Key was in the form of a loan to Siesta Key in the amount of $800,000 payable pursuant to a draw schedule.

15.  Empire by conveyed title to the Siesta Key Property to Siesta Key by Florida deed which deed was held in escrow and never recorded.  Empire held title to the Siesta Key Property as a nominee on behalf of Siesta Key.

16.  Empire represented and agreed in the Operating Agreement that it would continue to pay the debt service on the Republic Mortgage until the sale of the Siesta Key Property and pay all carrying costs for the project (except construction cost overruns).

3

17.  Empire represented and agreed in the Operating Agreement that it would not encumber or cause any liens to be placed upon the Siesta Key Property without the advance written consent of all of the members of Siesta Key.

18.  Empire was appointed in the Operating Agreement as Siesta Key's managing member and agreed at all times to act by and through its managing member, Wilfred Azar.

19.  Wilfred Azar through Empire in fact managed and controlled all aspects of the construction and marketing of the luxury home on the Siesta Key Property.

20.  Empire was prohibited in the Operating Agreement from refinancing, amending, modifying or extending any mortgages on the Siesta Key Property if the same would increase the debt on the Siesta Key Property.

21.  Empire was prohibited in the Operating Agreement from executing any contract which called for the payment from Siesta Key in excess of $100,000 cumulatively without the prior written approval of all of the members of Siesta Key.

22.  Empire was prohibited in the Operating Agreement from encumbering any of the assets of Siesta Key outside of the ordinary course of business without the prior written approval of all of the members of Siesta Key.

23.  On or about February 28, 2007, the Defendants caused Empire to refinance the Republic Mortgage and to increase significantly the mortgage debt against the Siesta Key Property by borrowing $2,672,000.00 from CNL Bank which loan was secured by another mortgage against the Siesta Key Property (the "CNL Mortgage").

4

24.  Upon information and belief, Empire distributed the net proceeds from the said loan from CNL Bank to the Defendants, or either of them, who used the net proceeds, or a significant part thereof, for personal and other purposes unrelated to Siesta Key.

25.  By the CNL Mortgage transaction, the Defendants increased the debt against the Siesta Key Property by more than $1.5 million and effectively depleted the Siesta Key Property of its equity and drained Siesta Key of its value.

26.  Neither of the Defendants informed Basciano of CNL Mortgage transaction nor did the Defendants request or obtain Basciano's consent to CNL Mortgage transaction.  The Defendants knowingly and purposefully remained silent and did not inform Basciano of their actions aforesaid.  Indeed, Wilfred Azar reported to Basciano on the progress of the construction and marketing of the luxury home before and after CNL Mortgage transaction without any indication of the refinancing.

27.  In or about April 2009, Basciano discovered that the Defendants caused Empire to refinance the Republic Mortgage and encumber the Siesta Key Property with the CNL Mortgage. Basciano discovered the actions of the Defendants through the investigation of a former employee who resided in Florida and not by any admission by Wilfred Azar, Melanie Azar, or either of them.

28.  On or about July 8, 2009, the parties resolved the situation created by the Defendants actions aforesaid by agreement whereby Empire purchased Basciano's interest in Siesta Key for $1.2 million, of which $200,000 was paid in cash and $1 million was to be paid pursuant to a promissory note secured by a mortgage against the Siesta Key Property.  The Defendants signed a personal guaranty jointly and severally guaranteeing Empire's obligations under the

promissory note.  This debt is the subject of these proceedings.

<u>COUNT I</u>

<u>NONDISCHARGEABILITY OF DEBT</u>

11 U.S.C. §523(a)(2)(A)

29.  That the Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 28 hereof as if fully set forth herein.

30.  11 U.S.C. §523(a)(2)(A) excepts from discharge any debt owed by a debtor "(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or *actual fraud* . . ."

31.  The Defendants fraudulently obtained funds by refinancing the Republic Mortgage, depleted the Siesta Key Property of its equity by encumbering the Siesta Key Property with the CNL Mortgage and drained Siesta Key of its value by their intentional and purposeful fraudulent actions aforesaid and their conduct amounts to actual fraud for purposes of a determination of the dischargeability of this debt under 11 U.S.C.§ 523(a)(2)(A).

32.  Basciano relied to his detriment upon the continued silence of the Defendants, and particularly that of Wilfred Azar, as to the Defendants' actions aforesaid.

33.  As a result of the fraudulent actions of the Defendants aforesaid, Basciano suffered a substantial loss.

34.  The Defendants' conduct violates 11 U.S.C. 523(a)(2)(A) and any indebtedness due Basciano as a result of the fraudulent acts by the Defendants, or either of them, constitutes a non-dischargeable debt.

WHEREFORE, Basciano respectfully requests that this Court enter a determination pursuant to 11 U.S.C. §523(a)(2)(A) in favor of Basciano and against the Defendants that the Defendants' debt to Basciano is excepted from any discharge that the Debtors may be granted and for such other and further relief as the Court deems just and proper.

<u>COUNT II</u>

<u>NONDISCHARGEABILITY OF DEBT</u>

11 U.S.C. §523(4)

35.  That the Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 34 hereof as if fully set forth herein.

36.  11 U.S.C.§ 523(a)(4) excepts from discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity...."

37.  The position of ultimate trust that Wilfred Azar held as the managing member of Empire which in turn was the managing member of Siesta Key, and through the actual relationship between Wilfred Azar and Basciano in regards to the construction and marketing of the luxury home on the Siesta Key Property, created a fiduciary relationship for purposes of the determination of the dischargeability of this debt under 11 U.S.C.§ 523(a)(4).

38.  The Defendants fraudulently appropriated the equity in the Siesta Key Property and their actions aforesaid amount to embezzlement for purposes of a determination of the dischargeability of this debt under 11 U.S.C.§ 523(a)(4).

39.  The Defendants' conduct violates 11 U.S.C. 523(a)(4) and the debt due Basciano resulted from embezzlement by the Defendants and constitutes a non-dischargeable debt.

WHEREFORE, Basciano respectfully requests that this Court enter a determination pursuant to 11 U.S.C. §523(a)(4) in favor of Basciano and against the Defendants that the Defendants' debt to Basciano is excepted from any discharge that the Debtors may be granted and for such other and further relief as the Court deems just and proper.

<u>COUNT III</u>

<u>NONDISCHARGEABILITY OF DEBT</u>

11 U.S.C. 523(a)(6)

40.  That the Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 hereof as if fully set forth herein.

41.  11 U.S.C. 523(a)(6) excepts from discharge an individual debtor from          any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

42.  The Defendants willfully, knowingly, and maliciously injured Basciano  and caused him significant harm by their actions aforesaid for purposes of a determination of the dischargeability of this debt under 11 U.S.C.§ 523(a)(6).

43.  The Defendants' conduct violates 11 U.S.C. 523(a)(6) and any indebtedness due Basciano as a result of the malicious and willful injuries by the Defendants constitutes a  non-dischargeable debt.

WHEREFORE, Basciano respectfully requests that this Court enter a determination pursuant to 11 U.S.C. §523(a)(6) in favor of Basciano and against the Defendants that the Defendants' debt to Basciano is excepted from any discharge that the Debtors may be granted and for such other and further relief as the Court deems just and proper.

/s/ Steven M. Sindler
Steven M. Sindler
1130 Annapolis Road
Suite 101
Odenton, Maryland 21113
410-551-9323
Attorney for Plaintiff

Dated: September 14, 2011